IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN C. S.,[1]

            Plaintiff,

v.

COMMISSIONER, Social Security Administration,

            Defendant.

No. 3:18-cv-02185-HZ

OPINION & ORDER

HERNÁNDEZ, District Judge:

    Plaintiff brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

1 - OPINION & ORDER

For the reasons that follow, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

## BACKGROUND

Plaintiff was born on June 17, 1969 and was forty-four years old on September 12, 2013, the alleged disability onset date. Tr. 24.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through December 31, 2014. Tr. 18. Plaintiff has at least a high school education and is unable to perform past relevant work as a maintenance mechanic. Tr. 24. Plaintiff claims he is disabled based on conditions including schizophrenia, depressive disorder, anxiety, panic disorder with agoraphobia, and degenerative disc disease. Tr. 18.

Plaintiff's benefits application was denied initially on December 4, 2015, and upon reconsideration on April 11, 2016. Tr. 15. A hearing was held before Administrative Law Judge Cynthia Rosa on November 6, 2017. Tr. 32–88. ALJ Rosa issued a written decision on March 2, 2018, finding that Plaintiff was not disabled and therefore not entitled to benefits. Tr. 15–26. The Appeals Council declined review, rendering ALJ Rosa's decision the Commissioner's final decision. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 9.

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 18.

At step two, the ALJ determined that Plaintiff had "the following severe impairments: schizophrenia; depressive disorder; anxiety, panic disorder with agoraphobia; degenerative disc

disease of the lumbar spine with stenosis at L5-S1 and disc protrusion and annular tear at L4-5." Tr. 18.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19–20.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work "except he can occasionally climb ramps and stairs, but never ropes, ladders or scaffolds; he can occasionally stoop, crouch, crawl and kneel; he can do simple, routine tasks with a reasoning level of 1-2 with no public contact and occasional, superficial contact with a small group of coworkers; he should avoid concentrated exposure to vibration and hazards." Tr. 20.

At step four, the ALJ determined that Plaintiff was unable to perform past relevant work. Tr. 24. At step five, the ALJ relied on the testimony of a vocational expert to find that Plaintiff could perform jobs existing in significant numbers in the national economy. Tr. 25. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 26.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff challenges only the ALJ's treatment of psychiatrist Dr. Farley's opinion.

### I.      Medical Opinion Evidence

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are

supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, the ALJ summarized Dr. Farley's opinion as follows:

> James Farley, M.D., a treating psychiatrist, indicates the claimant's symptoms markedly limit his functioning. They limit his ability to interact with the public, respond appropriately to criticism and instruction, and work in coordination with others. He is not able to work a full-time schedule without frequent absences. Anxiety interferes with his ability to do complex tasks. He would probably miss at least one day weekly and often be late for work.

Tr. 23. The ALJ gave this assessment "some weight" but found that Dr. Farley's opinion "that the claimant would miss work weekly is speculative. The claimant has been able to attend school and work on projects with his father. He has responded well to treatment and reports improvement with a daily schedule." Tr. 23.

### a. Effective Treatment and Improvement

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may consider factors including "effectiveness or adverse side effects of any pain medication[.]"). However, where "[c]ycles of improvement and debilitating symptoms are a common occurrence," an ALJ errs by "pick[ing] out a few isolated instances of improvement over a period of months or years and [] treat[ing] them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms . . . . [I]mproved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Id.*

While the record demonstrates that Plaintiff has, at times, reported an improved mood with medication, it does not support the conclusion that this improvement (1) was persistent or (2) suggested that Plaintiff could function effectively in the workplace. To the contrary, the record illustrates that Plaintiff experienced fluctuating symptoms with periods of both improvement and decline. For example, in April 2015, while Plaintiff continued to experience auditory hallucinations, he also reported a good mood without depression and lower anxiety levels. Tr. 638. At his next visit only three months later, however, Plaintiff reported "much higher" anxiety levels, with more panic attacks, a mildly low mood, and difficulty concentrating. Tr. 634. In November 2015 and January 2016, Plaintiff reported a low mood, very high anxiety that "greatly interfered with his ability to function," agoraphobia, and auditory hallucinations. Tr. 627, 630. In February 2016, while Plaintiff again reported some improvement, he continued to experience auditory hallucinations. Tr. 624. His anxiety was also so high that he needed to "overuse lorazepam at times 'just get out of the door.'" Tr. 624.[3]

Not only does Plaintiff's mental health appear to have fluctuated significantly over time, but it also appears that Plaintiff has cycled through a number of medications—none of which brought long-lasting results without side-effects—in an attempt to control his symptoms. *See e.g.*, tr. 641 (decreased Olanzapine dosage), tr. 639 (decreased Olanzapine dosage), tr. 635 (trial of Abilify), tr. 634 (stopped Zypreza), tr. 631 ("While olanzapine has likely caused some weight gain, he needs antipsychotic medication and has had adverse effects from multiple other atypical antipsychotics. He has had similar adverse effects with both Abilify and Geodon. After PAR

---

[3] Similarly, while Plaintiff reported, at one point, that it was helpful to "do[] something every day," he also made it clear that "doing something" meant working for a total of four hours, with breaks, over the course of a day. Tr. 692. This same record also notes that despite feeling "better," Plaintiff still wanted to try a different antipsychotic medication, his energy levels varied, and he continued to have panic attacks, daily auditory hallucinations, and difficulty multitasking. Tr. 692.

discussion he is not interested in trying asonapine or Fanapt."), tr. 627 ("wanted Zoloft to work so bad," stopped Sertraline), tr. 630 (stopped Abilify). In sum, the record does not support the ALJ's conclusion that Plaintiff's symptoms were improved by medication and a daily schedule. Rather, it suggests isolated instances of improvement coupled with periods of decline, and an ongoing search for successful medication management. Thus, the ALJ erred in relying on evidence of "improvement" as a reason to reject Dr. Farley's opinion.

### b. Activities of Daily Living

The ALJ also found that Dr. Farley's opinion was inconsistent with the fact that "Plaintiff has been able to attend school and work on projects with his father." Tr. 23. While inconsistencies between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion, *Ghanim*, 763 F.3d at 1162, here, the record does not support the ALJ's findings.

The record suggests that Plaintiff attended community college in 2013. However, Plaintiff did not graduate, and there is little information about what, exactly, that attendance looked like. For example, neither the ALJ nor Defendant cites any information about how many classes Plaintiff took at a time, or whether Plaintiff ever attended classes for more than a few hours a day. Additionally, Plaintiff reported severe anxiety associated with this attendance. To combat this anxiety, Plaintiff overused Lorazapam, even though it severely limited the time he could spend at school. Specifically, he reported that the drug would cause him to wet his pants if he had two classes in one day. Tr. 48.[4] And, even with Lorazapam, he continued to have panic attacks, which caused him to miss class every two weeks. Tr. 49. Ultimately, he failed to complete the program because his "anxiety was too high and the medication [he] was using for

---

[4] Dr. Farley also expressed some concern, at a later date, that Plaintiff's use of Lorazapam could impair his memory and cognition. Tr. 642.

8 - OPINION & ORDER

anxiety wasn't working." Tr. 40. Thus, the Court cannot find that the records of Plaintiff's school attendance are inconsistent with Dr. Farley's opinion that Plaintiff would miss work weekly or often be late.

Additionally, while the ALJ found that Dr. Farley's opinion was inconsistent with the fact that Plaintiff worked on projects with his father, the Court does not agree. Plaintiff testified that these projects included "organiz[ing] the screws, mak[ing] the lawnmower start, start[ing] the chainsaw," and working on restoring an old Camaro. Tr. 53. However, there is no information about how often or for how long Plaintiff worked on these projects. The Court cannot discern, without further explanation, how these activities—presumably occurring at Plaintiff's father house—might contradict Dr. Farley's opinion. The ALJ therefore erred in relying on Plaintiff's activities of daily living.

Because the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Farley's opinion, the ALJ's decision must be reversed.

## II. Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the

claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that remand for an award of benefits is appropriate. This case, however, is not one with "rare circumstances" justifying that type of remand. As noted above, while Dr. Farley's opinion supports a finding of disability, state agency physicians opined that Plaintiff would not, in fact, be impacted by irregular attendance and poor punctuality. *See e.g.*, tr. 119, 131. The record contains additional outstanding ambiguities. For example, while Plaintiff first testified that he primarily kept his father company while his father worked on projects, tr. 45, his later testimony suggests more direct involvement, tr. 53 ( Plaintiff's father "sits in his chair and dreams of stuff that I should be doing, and then I get over there and I can't do it all . . . He'll stack a whole bunch of things that need to be done at once."). The scope and relevance of these activities remain undeveloped. Thus, while the ALJ's decision includes reversible error, the record is not fully developed, and further proceedings are required. The Court therefore declines to remand this case for the payment of benefits.

//
//
//
//
//
//
//

## CONCLUSION

The decision of the Commissioner is reversed and remanded for further administrative proceedings.

IT IS SO ORDERED.

Dated: _____June 1, 2020_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge